# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** | *<br>* |
| Plaintiff, | *<br>* |
| v. | *    Civil No. **PJM 10-2921**<br>* |
| **TARIQ L. BELT,**<br>(a/k/a Tye LABon Ali) | *<br>*<br>* |
| Defendant. | *<br>* |

## OPINION

The United States sued Tariq L. Belt, a federal prisoner, seeking declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.[1] The Government requests that (1) Belt be prohibited from filing any more civil suits *in forma pauperis*, pursuant to 28 U.S.C. § 1915(g); (2) Belt and anyone acting on his behalf be enjoined from filing or sending any financing statements, liens, or correspondence to any federal employee or former employee, pursuant to Fed. R. Civ. P. 65; (3) all financing statements filed by or on behalf of Belt be declared null, void, and of no legal effect; and (4) Belt's non-vested good time credits be revoked under 28 U.S.C. § 1932. Belt, acting *pro se*, opposes the suit.

---

[1] Pursuant to 28 U.S.C. §§ 2201-02, a federal court may issue declaratory relief provided that (1) the complaint alleges an "actual controversy" between the parties of "sufficient immediacy and reality to warrant issuance of a declaratory judgment;" (2) the court possesses an independent basis for jurisdiction over the parties; and (3) the court does not abuse its discretion in its exercise of jurisdiction. *Volvo Constr. Equip. N. Am. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004). A district court will not abuse its discretion in issuing a declaratory judgment if doing so "'will serve a useful purpose in clarifying and settling the legal relations in issue,' and 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Id*. (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)). The Court finds that all three elements are met in this case.

The parties have filed cross motions for summary judgment [Papers No. 2 and 29]. For the following reasons, the United States' Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part, and Belt's Motion for Summary Judgment is **DENIED**.

**I.**

This civil action arises out of Belt's allegedly improper filing of documents purporting to be Uniform Commercial Code ("U.C.C.") financing statements, notices of breach of security agreements, and notices of default against certain federal employees[2] involved in his criminal prosecution and conviction. The undisputed facts are these:

On December 8, 2005, Belt entered a guilty plea in the District Court of Maryland to Conspiracy with Intent to Distribute and Possession with Intent to Distribute Cocaine (Docket No. WDQ-03-376). He was sentenced to a 212 month term of imprisonment. Belt also entered a guilty plea to Possession of Cocaine on February 13, 2006 (Docket No. WDQ-05-549), and was sentenced to a one year term of imprisonment, to be served consecutive to the sentence imposed in case No. WDQ-03-376. As of the time of this opinion, Belt is serving his sentence at the Sandstone Federal Correctional Institute in Minnesota.

In November 2006, Belt filed a U.C.C. financing statement (File No. 181286925) with the Maryland Department of Assessments and Taxation. Although the exact purpose of the financing statement is difficult to ascertain, it appears intended to create a security interest in Belt's name (in capital letters: TARIQ LIYUEN ADEVAMI BELT). The secured party appears to be Belt himself, under the trade name or alias "Tye LABon Ali."[3] Belt amended the financing

---

[2] These employees include the presiding federal judge, two Magistrate Judges, two Assistant United States Attorneys ("AUSAs"), the United States Attorney, Drug Enforcement Administration case agents, and the Clerk of the Court of the United States District Court for the District of Maryland.

[3] Belt was in federal custody at the time of the filing but listed his address as 202 Dauntsey Drive, Arnold, Maryland. The "organizational ID" provided in the papers was Belt's Social Security number.

statement in August 2007. He addressed the statement to "[a]ll general and specific persons d/b/a public officials." He claimed that he had sole ownership and property interest in his name ("TARIQ L. BELT"), trade name (Tye LABon Ali), photos, fingerprints, and DNA, among other bodily materials. According to the papers, any unauthorized use or misuse of this so-called private property would result in damages of $50,000, "due immediately upon use with or without demand notice, invoice of immediate collection."[4] Belt filed a second financing statement in February 2008 (File No. 181333751).[5]

Since February 2006, Belt has filed no less than thirty-three civil actions[6] in the District Court of Maryland and directed correspondence to various Judges, Magistrate Judges,

---

[4] Belt instructed in the statement that payments for damages should be forwarded to the Dauntsey Drive address. He also granted his power of attorney to his alias, Tye LABon Ali, and declared that he was of "Sovereign Moorish Nationality."

[5] The second statement was primarily directed at Emile Henault, Belt's former attorney, and Belt's wife, Jacinda. Belt claimed that there was a security agreement between Jacinda (JACINDA S. BELT) and him (again in capital letters, TARIQ L. BELT) and that all of Jacinda's property was held in a trust for Belt's use. He valued the various agreements between them at $1 million to $10 million and noted that he had sent Jacinda a notice of default. Belt referred to himself as "Lord Noble" throughout the documents and declared that his wife was "Lady Jacinda."

[6] (1) *Belt v. DEA*, No. DKC-06-356 (D. Md. Feb. 24, 2006) (order dismissing petition without prejudice); (2) *Belt v. United States*, No. WDQ-06-2876, slip op. (D. Md. Jan. 3, 2007) (dismissing petition without prejudice); (3) *Belt v. United States*, No. WDQ-06-2877, slip op. (D. Md. Jan. 3, 2007) (dismissing petition without prejudice); (4) *Belt v. United States District Court*, No. WDQ-07-310, slip op. (D. Md. Feb. 16, 2007) (denying request for records); (5) *Belt v. Warden*, No. WDQ-07-1299, slip op. (D. Md. June 13, 2007) (denying request for records); (6) *Belt v. United States*, No. WDQ-07-1541, slip op. (D. Md. June 20, 2007) (dismissing petition without prejudice); (7) *Belt v. Clerk of the Court*, No. WDQ-07-2455 (D. Md. Sept. 24, 2007) (order dismissing complaint for failure to state a claim); (8) *Belt v. United States*, No. WDQ-07-2456 (D. Md. Sept. 24, 2007) (order dismissing complaint without prejudice for failure to state a claim); (9) *Belt v. United States*, No. WDQ-07-2715 (D. Md. Oct. 16, 2007) (order dismissing complaint for failure to state a claim); (10) *Belt v. DEA Baltimore Field Office*, No. WDQ-08-936 (D. Md. May 28, 2008) (order dismissing complaint without prejudice); (11) *Belt v. United States*, No. WDQ-08-975 (D. Md. Apr. 25, 2008) (order dismissing complaint without prejudice for failure to state a claim); (12) *Tye LaBon Ali v. United States*, No. WDQ-08-1065 (D. Md. Apr. 30, 2008) (order dismissing complaint without prejudice); (13) *Belt v. Clerk*, No. WDQ-08-1850 (D. Md. July 29, 2008) (order dismissing complaint for failure to state a claim); (14) *Tye LaBon Ali v. Grimm*, No. WDQ-08-2099 (D. Md. Aug. 22, 2008) (order dismissing complaint without prejudice); (15) *Tye LaBon Ali v. Cannon*, No. WDQ-08-2100 (D. Md. Aug. 22, 2008) (order dismissing complaint without prejudice): (16) *Tye LaBon Ali v. Cannon*, No. WDQ-08-2101 (D. Md. Aug. 22, 2008) (order dismissing complaint for failure to state a claim); (17) *Tye LaBon Ali v. Cannon*, No. WDQ-08-2102 (D. Md. Aug. 22, 2008) (order dismissing complaint without prejudice); (18) *Tye LaBon v. Warden*, No. WDQ-08-3296 (D. Md. Jan. 5, 2009) (order dismissing complaint without prejudice); (19) *Tye LaBon Ali v. Warden*, No. WDQ-09-464 (D. Md. Mar. 6, 2009) (order dismissing complaint without prejudice); (20) *Belt v. United States*, No. WDQ-09-817 (D. Md. Apr. 6, 2009) (order dismissing complaint without prejudice for failure to state a claim); (21) *Belt v. Warden*, No. WDQ-09-1034 (D. Md. May 4, 2009) (order dismissing complaint without prejudice for failure to state a claim); (22) *Belt v.*

prosecutors, and the Clerk of the Court.[7] In the majority of these actions, Belt appears to claim that a security agreement exists between him and the named federal employees pursuant to these U.C.C. financing statements, that such agreement has been breached, and that the failure of those named to respond constitutes default, entitling him to multimillion dollar judgments against them. Other actions question the sentences and conditions of confinement related to his underlying criminal convictions. Still others request information and documents from the Court and its officers, along the lines of Freedom of Information Act requests. Each one of Belt's lawsuits has been dismissed by the court *sua sponte*.

On October 18, 2010, the Government filed the present action alleging that Belt has filed numerous frivolous suits based on fraudulent financing statements. The Government seeks (1) revocation of Belt's *in forma pauperis* privileges; (2) an injunction barring Belt and anyone acting on his behalf from filing or sending any liens, financing statements, pleadings, or correspondence to any current or former federal employee; (3) a declaration that all of Belt's liens and financing statements are null, void, and of no legal effect; and (4) revocation of all of Belt's non-vested good time credits.

---

*Warden*, No. WDQ-09-1431 (D. Md. June 9, 2009) (order dismissing complaint without prejudice for failure to state a claim); (23) *Belt v. Warden*, No. WDQ-09-2175 (D. Md. Aug. 31, 2009) (order dismissing complaint without prejudice); (24) *Belt v. Warden*, No. WDQ-09-2883 (D. Md. Nov. 12, 2009) (order dismissing complaint without prejudice); (25) *Belt v. United States*, No. WDQ-09-3147 (D. Md. Mar. 16, 2010) (order dismissing petition as time-barred); (26) *Belt v. Warden*, No. WDQ-09-3206 (D. Md. Dec. 11, 2009) (order dismissing complaint without prejudice for failure to state a claim); (27) *Belt v. Warden*, No. WDQ-10-506 (D. Md. Mar. 15, 2010) (order dismissing complaint as frivolous and for failure to state a claim); (28) *Belt v. Warden*, No. WDQ-10-1244 (D. Md. May 25, 2010) (order dismissing complaint without prejudice); (29) *Belt v. United States*, No. WDQ-10-1644 (D. Md. June 22, 2010) (order dismissing motion without prejudice for lack of subject matter jurisdiction); (30) *Belt v. Warden*, No. WDQ-10-2056 (D. Md. July 30, 2010) (order dismissing complaint without prejudice for failure to state a claim); (31) *Belt v. Warden*, No. WDQ-10-2057 (D. Md. Aug. 11, 2010) (order dismissing complaint without prejudice for lack of jurisdiction); (32) *Belt v. United States*, No. WDQ-10-2539 (D. Md. Oct. 6, 2010) (order dismissing petition without prejudice for failure to state a claim); (33) *Belt v. Legg, et al.*, No. PJM-10-2540 (D. Md. Oct. 5, 2010) (order dismissing petition without prejudice).

[7] Additionally, the Court notes that, according to a PACER search between 2006 and 2011, Belt filed ten civil actions in federal courts in Virginia, Minnesota, the District of Columbia, and the Court of Federal Claims. Belt also filed ten federal appeals during that time period.

Belt argues that he filed the financing statements against himself, not "on any judge of this or any other court," and denies any knowledge of the liens the Government discusses. He alleges that his past pleadings were sent to various government officials as correspondence and were not complaints, petitions, or any other form of civil action. He also attempts to attack the validity of his underlying criminal convictions.[8]

## II.

Summary judgment is governed by Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

---

[8] To the extent that Belt seeks to challenge his criminal convictions and sentences, the Court notes that this case is not the proper venue for such a claim. *See* 28 U.S.C. § 2255 (requiring prisoners to file motions to vacate, set aside, or correct sentences within one year of a sentence). Accordingly, the Court will not consider these arguments.

showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp.*, 477 U.S. at 323-24).

A party proceeding *pro se* is entitled to a "less stringent standard" than is a lawyer, and the court must construe his arguments liberally, no matter how "inartfully pleaded." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *cf. Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 722 (4th Cir. 2010) (observing that liberal construction of a complaint is particularly appropriate where a *pro se* plaintiff alleges civil rights violations). Nevertheless, even a *pro se* pleading or motion must meet a minimum threshold of plausibility. *See, e.g.*, *O'Neil v. Ponzi*, 394 F. App'x 795, 796 (2d Cir. 2010).

### III.

The Government's and Belt's Motions for Summary Judgment [Papers No. 2 and 29] present two issues: (A) the validity of the financing statements Belt filed and (B) Belt's claim that his voluminous correspondence with Court officials was not intended to serve as complaints.

### A.

Belt filed two financing statements against himself. Although the Court is unsure of Belt's intent, the language he uses in the statements and the types of claims he makes are consistent with reports of claims made by individuals who believe that who they are as a "natural

6

person" is distinct from their identities as United States citizens. Individuals who entertain this belief often file liens against themselves to either (1) recoup the profits of allegedly fraudulent contracts with the United States or (2) argue that they are not lawfully imprisoned.[9] *See, e.g.*, *Bryant v. Wash. Mut. Bank*, 524 F. Supp. 2d 753, 757-61 (W.D. Va. 2007) (plaintiff attempted to use a lien she filed against herself as payment for her mortgage); *United States v. Mitchell*, 405 F. Supp. 2d 602, 603 (D. Md. 2005) (defendants argued that their indictments were invalid because the United States had arrested them as citizens, not as "flesh and blood men").

In his financing statements, Belt repeatedly distinguishes between what appears to be himself or his alias, Tye LABon Ali, and another alleged person, "TARIQ BELT." The Court interprets this purported distinction as Belt's attempt to separate his natural person from a "fictitious" United States citizen. The fact that Belt has filed liens against "BELT" suggests that he subscribes to the belief that his citizenship is fraudulent[10] and that any agreement with the citizen "BELT" does not bind the person Belt.

Whatever may be Belt's beliefs about his citizenship status, his financing statements are wholly invalid. Construing the evidence in the light most favorable to him, there is simply no

---

[9] The theory appears to be that the United States tricks individuals into becoming citizens through various "contracts," such as birth certificates and Social Security cards. *See Bryant v. Wash. Mut. Bank*, 524 F. Supp. 2d 753, 758 (W.D. Va. 2007). The United States allegedly profits from these fraudulent contracts in some way and holds the profits in secret trust accounts. *Id.* at 759. The U.C.C. apparently provides the remedy of "redemption" by which individuals can gain access to these accounts. *Id.* Through redemption, individuals file U.C.C. liens against the "fictitious entit[ies]" created by their birth certificates and Social Security cards and use these liens to make claims on the trust accounts. *Id.* Proponents of redemption distinguish the alleged fictitious entity from the natural person in writing by using all capital letters to refer to the fictitious entity. *Id.*

[10] The Court notes that Belt's habit of referring to himself as "Lord Noble" and of "Sovereign Moorish Nationality" in the financing statements is consistent with the alleged distinction between a natural person and a citizen. Some plaintiffs have relied on what they have called the "true" Thirteenth Amendment to argue that various individuals are not citizens. This version of the Thirteenth Amendment allegedly states that individuals who accept titles of nobility must renounce their United States citizenship. *See, e.g.*, *Sibley v. Culliver*, 377 F.3d 1196, 1198 (11th Cir. 2004) (plaintiff relied on "true" Thirteenth Amendment to argue that because judges are called "Your Honor," they are nobles and not citizens). The Court interprets Belt's claim of a noble title and another nationality as further indications of his attempt to renounce his citizenship and therefore contest the Government's ability to keep him imprisoned. However, there is no evidence that Belt has actually renounced his citizenship, nor would evidence of that fact affect the validity of his confinement.

7

basis to conclude that he (or his alter ego Tye LABon Ali) has any actual interest in "BELT's" property or that "BELT" even has any property separate from Belt.  Further, neither federal nor state law provides a basis for relying on liens in criminal proceedings.  *See, e.g.*, *Mitchell*, 405 F. Supp. 2d at 604 ("[T]he U.C.C. has no bearing on criminal subject matter jurisdiction."); *United States v. Cousins*, No. 06-CR-8, 2007 U.S. Dist. LEXIS 59385, at *4-*5 (W.D. Va. Aug. 14, 2007) (same); *United States v. Humphrey*, 287 F.3d 422, 435 (6th Cir. 2002) (same), *overruled on other grounds by United States v. Leachman*, 309 F.3d 377 (6th Cir. 2002).

To the extent that Belt has relied on his financing statements to argue that the United States and various federal employees are in default and owe him millions of dollars, the Court finds that these claims similarly lack any basis in law or fact.  *See United States v. Ekblad*, 732 F.2d 562, 563 (7th Cir. 1984) (declaring void defendant's lien filed against an Internal Revenue Service employee); *United States v. Barker*, 19 F. Supp. 2d 1380, 1384 (S.D. Ga. 1998) ("Neither federal nor state law provides that a citizen may file a lien on the property of a public official if the citizen believes that the official has not faithfully fulfilled his or her duties to the public."); *United States v. MacElvain*, 858 F. Supp. 1096, 1100 (M.D. Ala. 1994) (finding no legal basis for filing common law liens against government employees in their personal capacities).  Belt provides no evidence, nor can he, that any genuine commercial obligations exist or that anyone owes him anything for alleged default judgments on the financing statements.  The Court finds no factual or "legal basis for filing these common-law liens, complaints, and commercial notices" and concludes that in their entirety they are invalid.  *See MacElvain*, 858 F. Supp. at 1100.

**B.**

The Government has provided evidence that Belt has filed thirty-three lawsuits against federal employees involved in his prosecution and conviction.[11] In response, Belt says that all he did was to send correspondence to various court officials, including judges, prosecutors, and the Clerk of the Court, among others, and that none of the correspondence was intended to serve as a complaint.

Having reviewed Belt's filings, the Court finds that, although styled as letters, each document alleges facts, makes out a demand, and requests relief. *See* Fed. R. Civ. P. 8 (setting out the requirements for pleadings). Each document was formally accepted by the Clerk of the Court as a complaint, with the filing fee waived. Each document is unquestionably a complaint.[12]

**IV.**

Having found Belt's financing statements invalid and that his letters and other correspondence are fairly characterized as formal civil complaints, the Court considers the remedies sought by the Government.

**A.**

The Government's first request is that Belt's *in forma pauperis* privileges be revoked.

The Prison Litigation Reform Act ("PLRA") grants prisoners the right to file proceedings *in forma pauperis* ("IFP"). 28 U.S.C. § 1915(a). A prisoner who exercises his IFP privileges may file a suit without prepayment of fees.[13] 28 U.S.C. § 1915(b). However, the right to file

---

[11] *See supra* note 6.

[12] Courts interpret *pro se* pleadings liberally. *See Erickson*, 551 U.S. at 94.

[13] A prisoner proceeding under IFP privileges is still required to pay court fees but may do so in installments, rather than in a single payment due at the time of filing. 28 U.S.C. § 1915(b); *Nagy v. FMC Butler*, 376 F.3d 252, 256 (4th Cir. 2004).

9

without prepayment of fees is not unlimited. A prisoner may be denied IFP privileges if he has, on three or more occasions, while incarcerated, filed an action that was dismissed on the grounds that it (1) was frivolous, (2) was malicious, or (3) failed to state a claim upon which relief could be granted.[14] 28 U.S.C. § 1915(g); *Tolbert v. Stevenson*, 635 F.3d 646, 650 (4th Cir. 2011). Once a prisoner accrues these "three strikes," he can no longer file a suit without paying court fees up front, unless he can demonstrate imminent danger of serious physical injury. *McLean v. United States*, 566 F.3d 391, 393-94 (4th Cir. 2009).

At least three, indeed virtually all thirty-three, of Belt's actions have been dismissed for failure to state a claim, frivolousness and malice aside.[15] Each dismissal therefore counts as a "strike" under the PLRA. *See Tolbert*, 635 F.3d at 650. Having accrued at least three strikes under § 1915(g), Belt may no longer file a suit without prepaying court fees. The Court **GRANTS** the Government's request to revoke Belt's IFP privileges.

**B.**

The Government also seeks a permanent injunction, pursuant to Fed. R. Civ. P. 65, barring Belt or anyone acting on his behalf from (1) filing any liens, financing statements, or other instruments purporting to attach to or otherwise affect the assets or property of any current or former federal employee and (2) sending any liens, financing statements, pleadings, or correspondence to any federal employee or former employee that purports to suggest a financial

---

[14] A dismissal for failure to state a claim is presumed to be both a judgment on the merits and, unless otherwise specified, to be rendered with prejudice. *See McLean v. United States*, 566 F.3d 391, 396 (4th Cir. 2009) (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) and *Carter v. Norfolk Cmty. Hosp. Ass'n*, 761 F.2d 970, 974 (4th Cir. 1985)).

[15] These cases include: (1) *Belt v. United States*, No. WDQ-07-2715 (D. Md. Oct. 16, 2007); (2) *Belt v. Clerk*, No. WDQ-08-1850 (D. Md. July 29, 2008); and (3) *Tye LaBon Ali v. Cannon*, No. WDQ-08-2101 (D. Md. Aug. 22, 2008). Although the court did not specify whether the dismissals were issued with or without prejudice, following *McLean*, this Court assumes that the dismissals were issued with prejudice. *See McLean*, 566 F.3d at 396.

relationship or establish a lien, financial interest, or contract between Belt or anyone acting on his behalf and the aforementioned individuals.

Federal injunctive relief is an extreme remedy. The party seeking an injunction must show that (1) there is irreparable injury, (2) there is a real and immediate threat of future injury, and (3) the requested injunction would be in the public interest. *See United States v. Martin*, 356 F. Supp. 2d 621, 627 (W.D. Va. 2005) (citing *Simmons v. Poe*, 47 F.3d 1370, 1382 (4th Cir. 1995) and *Lone Star Steakhouse & Saloon v. Alpha of Va.*, 43 F.3d 922, 929 (4th Cir. 1995)).

Attempts to secure liens or judgments based on false security filings, such as Belt has consistently undertaken, have typically been subjected to injunctive relief. *See, e.g.*, *Martin*, 356 F. Supp. 2d at 627-28 (enjoining defendants from filing liens against court officials involved in defendants' criminal prosecutions); *United States v. Shugarman*, 596 F. Supp. 186, 192 (E.D. Va. 1984) (enjoining defendants from filing "common law liens" against court or Internal Revenue Service personnel). *See generally Jones v. Caruso*, 569 F.3d 258 (6th Cir. 2009) (describing prisoners' practice of filing false liens under the U.C.C.); *Monroe v. Beard*, 536 F.3d 198 (3d Cir. 2008) (same).

Belt's history shows that issuance of a permanent injunction is required to prevent irreparable injury now and in the future and would be very much in the public interest. He has filed dozens of actions in multiple courts based on alleged claims related to his financing statements.[16] Indeed, he has filed four new cases in federal courts since the Government brought this lawsuit in October 2010.[17] His harassment of court officials is incessant and has caused the

---

[16] A review of Belt's litigation history on PACER shows that he filed three cases in 2006, six cases in 2007, seven cases in 2008, nine cases in 2009, eighteen cases in 2010, and one case in 2011.

[17] (1) *Belt v. Dep't of Justice*, No. 10-cv-2339 (M.D. Pa. Nov. 12, 2010) (habeas petition); (2) *Belt v. Office of Att'y Gen.*, No. 10-cv-1958 (D.D.C. Nov. 16, 2010) (habeas petition), transferred to *Belt v. Office of Att'y Gen.*, No. 10-cv-2333 (M.D. Pa. Nov. 16, 2010) (habeas petition); (3) *Belt v. U.S. Bureau of Prisons*, No. 10-cv-2642 (M.D. Pa. Dec. 28, 2010) (complaint); (4) *Belt v. United States*, No. 11-cv-954 (D. Minn. April 14, 2011) (complaint).

Government and the courts to devote scarce resources and time to consider his altogether frivolous claims.

The Court finds that the Government has made the requisite showing necessary for the imposition of a permanent injunction barring Belt or anyone acting on his behalf from (1) filing any liens, financing statements, or other instruments purporting to attach to or otherwise affect the assets or property of any current or federal employee and (2) sending any liens, financing statements, pleadings, or correspondence to any current or former federal employee.

**C.**

The Government also requests a declaration that all of Belt's liens and financing statements are null, void, and of no legal effect. As discussed in section III.A, the Court has reviewed the financing statements and determined that not a single one represents a bona fide commercial obligation. Because the liens created by Belt's financing statements lack any legitimate legal or factual basis, the Court **DECLARES** all the statements "null, void, and without any legal effect." *See United States v. Falice*, No. 04-CV-878, 2006 U.S. Dist. LEXIS 61049, at \*10 (M.D.N.C. Aug. 25, 2006).

**D.**

Finally, the Government requests that the Court revoke all of Belt's non-vested good time credits, for possible reduction of his prison sentence, pursuant to 28 U.S.C. § 1932.

Under that statute, a court may revoke an individual's non-vested good time credits in *any civil action brought by an individual convicted of a crime*, if the court finds that the action was filed for a malicious purpose, was filed solely to harass the party against which it was filed, or if the claimant testifies falsely or otherwise knowingly presents false evidence to the court. 28 U.S.C. § 1932 (emphasis added); *Alexander S. v. Boyd*, 113 F.3d 1173, 1384 (4th Cir. 1997).

But here the Government, not Belt, instituted the instant suit, so that the statute under which the Government seeks relief does not, strictly speaking, apply. That said, it may well be that the Bureau of Prisons will wish to consider revoking any good time credits that Belt may be entitled to. *See* 18 U.S.C. § 3624; Federal Bureau of Prisons, U.S. Dep't of Justice, *Sentence Computation Manual* 1-40 (1999), *available at* http://www.bop.gov/policy/progstat/5880_028.pdf (setting out the policies for computing and revoking good time credits). The Court therefore denies without prejudice the Government's request to revoke Belt's non-vested good time credits.

## V.

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part the Government's Motion for Summary Judgment [Paper No. 2] and **DENIES** Belt's Motion for Summary Judgment [Paper No. 29]. Final Judgment will be entered in favor of Plaintiff and the case will be **CLOSED**.

A separate Order will **ISSUE**.

                                                                                   /s/  
                                                    **PETER J. MESSITTE**  
                                        **UNITED STATES DISTRICT JUDGE**

**July 26, 2011.**